# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARK DICKERHOOF,

        Plaintiff,

v.                                      Civ. No.  01-975      JP/WWD

NEW MEXICO CORRECTIONS DEPARTMENT;
BERNALILLO COUNTY DETENTION CENTER; and
ROBERT J. PERRY, Corrections Secretary,
MARK RADOSEVICH, Director, Probation and Parole Division;
IRMA LUCERO, Warden, Western New Mexico Correctional Facility,
LAWRENCE TAFOYA, Warden,
Southern New Mexico Correctional Facility, and
JOHN DANTIS, Director, Bernalillo County Detention Center;
in their official and individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

On October 24, 2001, the New Mexico Corrections Department, Robert J. Perry, Mark Radosevich, Irma Lucero, and Lawrence Tafoya (collectively referred to as "the State Defendants") filed under Fed. R. Civ. P. 12 (B)(6) a Motion to Dismiss (Doc. No. 6) Plaintiff's claims against them.  The State Defendants' Motion is directed to Plaintiff's First Amended Complaint, which includes allegations that the State Defendants violated Plaintiff's federal constitutional rights and Plaintiff's rights under the constitution, statutes, and common law of the state of New Mexico.  The Court has jurisdiction over the claims alleged in Plaintiff's First Amended Complaint under 28 U.S.C. §§ 1331 & 1367 (a).

*Background*

The parties largely agree on the underlying facts of the case. Pl.'s Resp. at 1. Plaintiff pleaded guilty to possession of cocaine in state district court. Because Plaintiff had two felony convictions before pleading guilty to the pending charge, Plaintiff was a habitual offender under state law. NMSA 1978, § 31-18-17 (C) (1993). Under the habitual offender statute, the state district court had to sentence Plaintiff to four years imprisonment and could not suspend or defer any portion of that sentence. *Id*.

Plaintiff and the assistant district attorney prosecuting his case negotiated the terms of Plaintiff's guilty plea. Under the terms of that plea bargain, the assistant district attorney would not request incarceration for the cocaine charge so the only imprisonment confronting Plaintiff would be the mandatory four years under the habitual offender statute. The parties structured the plea bargain to give Plaintiff the earliest possible release from prison. Plaintiff's criminal defense attorney and the assistant district attorney believed that Plaintiff's incarceration would end in November 1998 under the terms of the plea bargain.

The parties then took the plea bargain to the state district court for approval. They explained the plea bargain to the state court judge, and expressly requested good-time credit for Plaintiff's pre-sentence confinement. Pl.'s Resp., Ex. 1, TR-8, lines 2-12. When Plaintiff asked the state court judge about his good time credit under the plea agreement, the following colloquy took place:

Plaintiff:     Well, I was told that the possibility that with the good time, I am only going to be doing another eleven and one-half months.

Judge:     Good time credit—now the five months we are talking about taking off the top, I will be suspending that basically without objection from

2

|  |  |
|---|---|
|  | anybody. *There's some question about my legal authority to do that*, but basically if [the assistant district attorney] doesn't complain then it happens. . . . |
| Plaintiff's: Attorney | Five months with good time. |
| Judge: | What I am saying is *the good time credit, once you get to the Department of Corrections, that's between you and the Department of Corrections.* |
| Plaintiff: | I have gotten qualified now because I have been there [the penitentiary], but I was going to ask for as much as I can. |
| Judge: | What I am trying to make clear is I have no authority over that either, so that's between you and the Department of Corrections, and I can't make promises on that. I mean, *everybody can make some sort of ballpark predictions, but that's not part of the deal*. |
| . . . |  |
| Plaintiff's: Attorney | Out of curiosity, the only people that could possibly object would be the corrections, right? |
| Judge: | The thing that may happen is they may calculate it or say "We don't calculate that." |

Pl.'s Resp., Ex. 1, TR-10 to 11 (emphasis added).

Afterwards, Plaintiff pleaded guilty to the possession of cocaine charge and began serving his time. When Plaintiff was not released in November of 1998 as he had expected, he went before the state district court on January 22, 1999, to have his judgment and sentence clarified. The state court entered an order that Plaintiff was "awarded 11 months of pre-sentence credit with all applicable good time." Defs.' Mot., Ex. A, p. 2. In that order the state district court also opined that "Defendant's release date is January 17, 1999." *Id.*

The New Mexico Corrections Department ignored the state court's order and refused to release Plaintiff. Plaintiff then filed notice under Tort Claims Act of his intent to sue the

Corrections Department for false imprisonment and personal injury. Pl.'s Resp. at 12. Based on the Corrections Department's calculation of Plaintiff's good time, Plaintiff was released in August of 1999. Defs' Mot. at 2.

Plaintiff now complains that the Corrections Department did not honor his agreement with the assistant district attorney and the state district court to be released in November 1998. Notably, Plaintiff's complaint does not question whether the Corrections Department's calculation of his good-time credit was otherwise improper.

### *Legal Standard*

Although the State Defendants' motion and the Plaintiff's response address in accordance with Fed. R. Civ. P. 12(b)(6) whether Plaintiff has stated claims upon which relief can be granted, both parties have tendered exhibits with their briefs. Because "matters outside the pleading" have been presented to and included in the Court's consideration of the State Defendants' motion, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12 (b).

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under Rule 56, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc.,

4

939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. Id. To withstand a motion for summary judgment, the non-movant must make "specific reference" to evidence in the record. Gross v. Burggraf Const. Co., 53 F.3d 1531, 1546 (10th Cir. 1995); D.N.M. LR-Civ. 56.1(b) (placing similar burden on both parties).

*Plaintiff's Supplemental Jurisdiction Claims*

Under 28 U.S.C. § 1367 (a), the Court has jurisdiction to decide "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Because Plaintiff's claims arising under the common, statutory, and constitutional law of New Mexico are related to Plaintiff's federal constitutional claims under 42 U.S.C. § 1983, they fall within the Court's supplemental jurisdiction.

Contractual Liability

Plaintiff contends that his verbal plea bargain with the assistant district attorney amounts to a contract enforceable against the Corrections Department. Although the parties failed to reduce the plea agreement to writing as required by Rule 5-304 (B) NMRA 2002, Plaintiff asserts that the written state district court's orders and the written transcripts of the state court proceedings provided writings that contractually bound the State, including the Corrections Department, to release Plaintiff in November 1998. Pl.'s Resp. at 8-9. There are many problems with Plaintiff's argument.

First, neither the state court's orders nor the transcripts of the court proceedings say that Plaintiff would be released in November 1998. To the contrary, when Plaintiff asked the state

5

court judge about his release date, the judge responded, "[E]verybody can make some sort of

ballpark predictions, but that's not part of the deal."  Although the Court recognizes that the

terms of a plea bargain are to be construed "according to what petitioner reasonably understood

when he entered his plea," *State v. Mares*, 119 N.M. 48, 51, 888 P.2d 930, 933 (1994) (quoting

*Lucero v. Kerby*, 7 F.3d 1520, 1522 (10th Cir. 1993)) (internal quotations and punctuation

omitted), the Court finds that the state court judge informed Plaintiff that his release date

remained uncertain.  Under state law, "[i]f the trial court resolves alleged ambiguities and no

further objection is made, the agreement is no longer ambiguous on those points addressed by the

court." *Mares*, 119 N.M. at 51, 888 P.2d at 933.  To the extent Plaintiff understood that he

would be released in November 1998, the state court judge disabused him of that notion.

Another problem with Plaintiff's complaint is that the authority to award good-time credit

lies only with the Corrections Department, and neither the state court judge nor the assistant

district attorney had the authority to contractually bind the Corrections Department with regard to

Plaintiff's good-time credit.  *State v. Aqui*, 104 N.M. 345, 348, 721 P.2d 771, 774 (1986)

(holding that persons accused of crime are not entitled to credit for time served before sentencing,

and that "the deduction of good time credits from an inmate's sentence is a discretionary matter

entrusted not to the courts but to the administrators of the Corrections Department"); *Campos de*

*Suenos, Ltd. v. County of Bernalillo*, 2001-NMCA-043, ¶ 31, 130 N.M. 563, 28 P.3d 1104 (Ct.

App. 2001) ("[P]ublic officers are limited in their authority to bind governmental entities, and the

general public is charged with notice of their limitations.").  Admittedly, the state court judge

attempted to approve of  the parties' agreement to award Plaintiff good-time credit for the time

he spent in pre-sentence confinement while at the same time questioning the judge's authority to

do so.  However, by stating "the good-time credit, once you get to the Department of

Corrections, that's between you and the Department of Corrections," the state court judge told

Plaintiff that only the Corrections Department had the authority to award that credit.  Given the

dialog between Plaintiff and the state court judge, Plaintiff could not have had reasonably

understood that the good-time credit for his pre-sentence confinement was a foregone conclusion.

*Aqui*, 104 N.M. at 348, 721 P.2d at 774.  Further, under state law the portion of a plea bargain

that is contrary to statute—here the attempt to award good-time credit for Plaintiff's pre-sentence

confinement—is not enforceable.  *Cf. State v. Santillanes*, 98 N.M. 448, 451, 649 P.2d 516, 519

(Ct. App. 1982) ("Plea agreements, absent constitutional or statutory invalidity, are binding upon

both parties . . . .").

Finally, the writings offered by Plaintiff fail to rise to the level of a written contract that

overcomes the Corrections Department's immunity from suit under NMSA 1978, § 37-1-23 (A).

Although Plaintiff relies on *Garcia v. Middle Rio Grande Conservancy District*, 1996-NMSC-

029, 121 N.M. 728, 918 P.2d 7, to assert an implied written contract, since *Garcia* was decided

New Mexico's courts have limited the use of extraneous writings to support the existence of a

valid written contract under Section 37-1-23 (A).  *Campos de Suenos, Ltd.*, 2001-NMCA-043, ¶

28 (declining to use writings not amounting to a contract to defeat statutory immunity outside the

employment area).  Therefore, the transcripts of the proceedings and various court orders are no

substitute for a valid written contract against the Corrections Department under state law.

Plaintiff's promissory estoppel argument fares no better.  In *Trujillo v. Gonzales*, 106

N.M. 620, 622, 747 P.2d 915, 917 (1987), the Supreme Court of New Mexico made it crystal

clear that a public official who makes oral promises without statutory authority to do so is

incapable of binding a state entity to a contractual agreement, even under the doctrine of promissory estoppel. Without some evidence that the Corrections Department permitted the assistant district attorney to negotiate Plaintiff's good-time credit on the Department's behalf, the assistant district attorney had no authority to offer Plaintiff good-time credit. Therefore, as a matter of law, Plaintiff had "no right to rely on the oral representations made to him" by the assistant district attorney as far as the Corrections Department and its officials are concerned. *Trujillo*, 106 N.M. at 622, 747 P.2d at 917.

Tort Liability

Plaintiff maintains that the State Defendants in their official and individual capacities are liable under two tort theories: false imprisonment and personal injury. However, without a waiver of immunity in the Tort Claims Act, none of the State Defendants are liable to Plaintiff. NMSA 1978, § 41-4-4 (A) ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability from any tort except as waived by" the Tort Claims Act.). Plaintiff fails to point to any provision in the Tort Claims Act that waived the State Defendants' immunity from liability.

In recognition of that deficiency, Plaintiff has characterized his plea bargain as invalid so that he can argue the waiver of immunity for law enforcement officers may apply. The Court does not find that Plaintiff's plea bargain was invalid. The state court judge informed Plaintiff that the Corrections Department would determine his good-time credit. When "the trial court resolves alleged ambiguities and no further objection is made, the agreement is no longer ambiguous on those points addressed by the court." *Mares*, 119 N.M. at 51, 888 P.2d at 933. Plaintiff did not object to the possibility that the Corrections Department could recalculate his credit. Further,

Plaintiff's "claim of entitlement to good time credit[] . . . challenge[s] the execution of [his] sentence[] rather than the sentence[] [itself]." *Aqui*, 104 N.M. at 348, 721 P.2d at 774. Thus, Plaintiff's attempt to cast his plea bargain as invalid or his sentence as illegal has no force.

State Constitutional Claims

Plaintiff alleges that the State Defendants have violated his state constitutional rights. The State Defendants cite to controlling authority which holds that "absent a waiver of immunity under the Tort Claims Act, a person may not sue the state for damages for violation of a state constitutional right." *Ford v. New Mexico Dept. of Public Safety*, 119 N.M. 405, 412, 891 P.2d 546, 553 (Ct. App. 1994). Plaintiff contends that because the Tort Claims Act is in derogation of the common law, the Act should be strictly construed to avoid such a result. Pl.'s Resp. at 14.

Plaintiff's argument has been made before, and failed. *Hydro Conduit Corp. v. Kemble,* 110 N.M. 173, 178 n.2, 793 P.2d 855, 860 n.2 (1990) ("Exactly what the 'common law' was after *Hicks* [*v. State*, 88 N.M. 588, 544 P.2d 1153 (1975),] is not clear. . . . [T]he common law now recognizes a constitutionally valid statutory imposition of sovereign immunity, and such immunity must be honored by the courts where the legislature has so mandated."). Plaintiff has not pointed to authority, statutory or otherwise, which waives the State Defendants' immunity from liability. Without authority to support the money damages Plaintiff seeks for the alleged violations of the state constitution, summary judgment is appropriate under *Ford*.

***Plaintiff's Federal Claims***

Plaintiff's complaint alleges a cause of action against the State Defendants in their individual capacities under 42 U.S.C. § 1983.[1]  The individual State Defendants have responded to Plaintiff's § 1983 claims by asserting their qualified immunity from suit.  Def.'s Mot. to Dismiss at 13.  To overcome the State Defendants' assertion of immunity, the burden of proof shifts to Plaintiff to establish that (1) a violation of a federal right has taken place, and (2) that the right violated was clearly established at the time of the unlawful conduct.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  Recent Supreme Court precedent has determined that the order of the analysis is crucial, and that the Court must "concentrate at the outset on the definition of the [federal] right and to determine whether, on the facts alleged, a [federal] right [can] be found."  *Saucier v. Katz*, 533 U.S. 194, ___, 121 S. Ct. 1251, 2159 (2001).

The individual State Defendants maintain that Plaintiff failed to sufficiently articulate a violation of a federally protected right.  Plaintiff's § 1983 claims all stem from what Plaintiff considers to be his false imprisonment—being kept in prison past November 1998—which could encompass an illegal seizure of Plaintiff under the Fourth Amendment.  However, an essential element of false imprisonment is missing here:  the lack of authority to confine.  NMSA 1978, § 30-4-3 (1963).  The Corrections Department and its individual officers had the legal authority to hold Plaintiff until Plaintiff satisfied his four year sentence, and to determine Plaintiff's entitlement

---

[1]  Plaintiff concedes that his § 1983 claims against the Corrections Department and the remaining defendants in their official capacities are not viable.  Pl.'s Resp. at 15.  Nonetheless, Plaintiff maintains that violations of the laws and constitution of New Mexico support a claim under 42 U.S.C. § 1983.  Because § 1983 vindicates only "federal rights elsewhere conferred by . . . the United States Constitution and federal statutes," when those rights are violated by state actors, *Baker v. McCollan*, 443 U.S. 137, 145 (1979), § 1983 does not address violations of state common, statutory, or constitutional law.

to good-time credit to be applied to that sentence. The officers at the Corrections Department had no duty to abide by the assistant district attorney's or the state court judge's calculation of Plaintiff's good-time credit. *Aqui*, 104 N.M. at 348, 721 P.2d at 774. Plaintiff's belief that he was entitled to good-time credit for his pre-sentence confinement is both unreasonable as a matter of fact and without foundation as a matter of law. Because the Corrections Department had the legal authority to confine Plaintiff beyond November 1998, Plaintiff has failed to assert a violation of a federally protected right. The individual State Defendants are entitled to immunity from suit.

IT IS THEREFORE ORDERED that the State Defendants' Motion to Dismiss (Doc. No. 6), which the Court treated as a motion for summary judgement, is GRANTED, and all of Plaintiff's state and federal claims against the New Mexico Corrections Department, Robert J. Perry, Mark Radosevich, Irma Lucero, and Lawrence Tafoya will be dismissed with prejudice.

_____

CHIEF UNITED STATES DISTRICT JUDGE