IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK DICKERHOOF,

        Plaintiff,

v.                                                       Civ. No. 01-975    JP/WWD - ACE

NEW MEXICO CORRECTIONS DEPARTMENT;
BERNALILLO COUNTY DETENTION CENTER; and
ROBERT J. PERRY, Corrections Secretary,
MARK RADOSEVICH, Director, Probation and Parole Division;
IRMA LUCERO, Warden, Western New Mexico Correctional Facility,
LAWRENCE TAFOYA, Warden,
Southern New Mexico Correctional Facility, and
JOHN DANTIS, Director, Bernalillo County Detention Center;
in their official and individual capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On March 7, 2002, Plaintiff filed a Motion to Reconsider Final Order for Summary Judgment [and] for Permission to Amend Complaint and Supporting Memorandum (Doc. No. 22). In light of *Whitesel v. Sensenberger*, 222 F.3d 861 (10th Cir. 2002), the Court held a hearing at which Attorney Winter Laite represented Plaintiff and Attorneys Sean Olivas and Meghan Dimond represented Defendants. During the hearing, the parties agreed to confer and submit to the Court the factual background of the case. This now has been done. Having considered all of the Plaintiff's arguments and the facts of the case, the Court will deny Plaintiff's motion to reconsider.

In his motion to reconsider, Plaintiff asserted that the Court's conversion of Defendants' motion to dismiss into a motion for summary judgment unfairly prejudiced him because of the

limited discovery that had taken place. Pl's Mot. to Recon. at 5. Conversion of a motion to dismiss into a motion for summary judgment without needed discovery is disfavored within the Tenth Circuit. *Whitesel*, 222 F.3d at 866; *Currier v. Doran*, 242 F.3d 905, 911 (10th Cir. 2001) (observing that where "discovery had been limited" a district court properly applied Fed. R. Civ. P. 12(b)(6) instead of Fed. R. Civ. P. 56). As a result of the May 30, 2002 hearing, Plaintiff has been allowed to develop the factual record and to present information contained in that expanded factual record in support of his motion for reconsideration and in opposition to Defendants' motion to dismiss. The Court has analyzed Plaintiff's claims in light of the developed factual record and, where appropriate, has treated Defendants' motion to dismiss as a motion for summary judgment presented under Fed. R. Civ. P. 56. As to other claims in regard to which it was not necessary to refer to the factual record, the Court has analyzed the sufficiency of Plaintiff's allegations under Fed. R. Civ. P. 12(b)(6).

*Plaintiff's Breach of Contract Claim*

      *A.    No Written Contract Exists Under NMSA 1978, § 37-1-23(A)*

In his original response to Defendant's Motion to Dismiss Plaintiff argued that his verbal plea agreement was binding on the Court and the district attorney, and, by implication, the Corrections Department. Plaintiff further argued that because a plea agreement is a constitutional contract, any ambiguity about its terms should be resolved in his favor. Pl's Resp. at 7.

Plaintiff's argument fails to appreciate the distinction between enforcing the terms of the plea agreement, which may be accomplished even though the plea agreement was verbal, and a claim seeking money damages for breach of contract. Plaintiff could have attempted to force the district attorney or the state court to adhere to the specific terms of his verbal plea agreement

2

through a habeas corpus petition, or perhaps a writ of mandamus. But in this action Plaintiff seeks money damages that he could not have obtained from either the district attorney or the state court for a violation of his plea agreement, and he fails to explain why he should be able to collect it from the Corrections Department and its officials who were not involved in the plea negotiations.

Notwithstanding the issue of the Corrections Department not being a party to the plea agreement, state law grants governmental entities "immunity from actions based on contract, except actions based on a valid written contract." NMSA 1978, § 37-1-23(A). The purpose of Section 37-1-23(A) is to "protect the public purse" by requiring "parties seeking recovery from the state" to "have valid written contracts." *Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 177-79, 793 P.2d 855, 859-61 (1990). Just last year the New Mexico Court of Appeals addressed verbal contracts under the statute. *Campos de Suenos, Ltd. v. County of Bernalillo*, 2001-NMCA-043, ¶ 18, 130 N.M. 563, 28 P.3d 1104, *cert. denied*, No. 26,934, June 28, 2001. *Campos de Suenos* held that permitting plaintiffs to "cobble together a contract" after a verbal agreement allegedly was reached and breached with a "slew" of separate writings like transcripts of official meetings would "undermine[] the purpose of having a comprehensive document, a 'valid written contract,' that defeats governmental immunity."

Plaintiff's plea agreement was never reduced to writing. Plaintiff contends that he will be able to show that he had a contract once the transcripts of his sentencing hearings and the affidavits from those involved are considered. *Campos de Suenos* precludes Plaintiff from concocting a "written contract" in this manner. Further, Plaintiff's First Amended Complaint failed to allege the existence of a valid written contract. Thus, Plaintiff's breach of contract claim

3

should be dismissed under Fed. R. Civ. P. 12 (b)(6). *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002) ("Our function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.") (internal quotations omitted).

      B.    *Promissory Estoppel Does Not Apply*

Plaintiff contends that in the absence of a written contract the doctrine of promissory estoppel allows him to collect money damages for the breach of his verbal plea agreement. However, the Supreme Court of New Mexico addressed the argument that promissory estoppel overcomes the governmental immunity conferred by § 37-1-23, and held "We find no merit to [plaintiff's] equitable argument because the language of the applicable statute is clear. [Plaintiff] had no right to rely on the oral representations made to him here." *Trujillo v. Gonzales*, 106 N.M. 620, 622, 747 P.2d 915, 917 (1987). Thus, Plaintiff cannot rely on promissory estoppel to sue on the basis of an oral promise made to him by state officials about his release date. This claim should be dismissed under the standard of Fed. R. Civ. P. 12 (b)(6).

      C.    *The Statute of Limitations Has Run*

Even if Plaintiff had a valid written contract under NMSA 1978, § 37-1-23(A), the limitations period for bringing the breach of contract claim has expired. Plaintiff argues that under the terms of his plea agreement he should have been released in November 1998, or by January 17, 1999. By statute, Plaintiff had two years to bring a law suit after Defendants breached his alleged contract. NMSA 1978, § 37-1-23(B). Plaintiff filed his original complaint

4

on May 21, 2001, more than four months after the statute of limitations had expired. Plaintiff's breach of contract action should be dismissed because it was untimely filed.

Plaintiff argues that under the doctrine of detrimental reliance Defendants cannot use the statutory limitations period to defeat his claim. However, Plaintiff points to nothing *these Defendants* did that gave rise to Plaintiff's detrimental reliance. To the contrary, Defendants kept Plaintiff incarcerated after Plaintiff had his judgment and sentence clarified by the state court in January 1999. Plaintiff admits in his affidavit that Defendants never hid their intention to keep Plaintiff incarcerated. Doc. No. 44 at 2. Plaintiff's claim based on the doctrine of detrimental reliance is without merit.

*Plaintiff's State Constitutional and Tort Claims*

Plaintiff maintains that his state constitutional and tort claims are still viable. However, Plaintiff's argument is not supported by a waiver of immunity from liability in New Mexico's Tort Claims Act. NMSA 1978, §§ 41-4-4 to 41-4-29. As stated in the Court's February 20, 2002, Memorandum Opinion and Order (Doc. No. 19, pp. 8-9), Plaintiff is not entitled to monetary damages on his state constitutional or tort claims without a waiver of immunity from liability in the Tort Claims Act . *Ford v. New Mexico Dep't of Public Safety*, 119 N.M. 405, 412, 891 P.2d 546, 553 (Ct. App. 1994) (addressing state constitutional claims); *Anchondo v. Corrections Dep't*, 100 N.M. 108, 666 P.2d 1255 (1983) (addressing Correction Department officials); *Vigil v. Martinez*, 113 N.M. 714, 832 P.2d 405 (Ct. App. 1992) (addressing probation officers).

Without any supporting authority Plaintiff contends that in the absence a valid plea agreement the state's sovereign immunity may be waived. Pl's Reply for the Mot. to Recons. at 5. However, there is no reason to believe that Plaintiff's plea was invalid. The record is clear that

5

after being charged as a four-time habitual offender subject to a mandatory eight year sentence, Doc. No. 36, Ex. 15, Plaintiff agreed to plead to a mandatory four year sentence as a three-time habitual offender. *Cf. State v. Ira*, 2002-NMCA-037, ¶ 35, 132 N.M. 8, 43 P.3d 359 ("A criminal defendant should only be allowed to withdraw his plea when he is not adequately notified of the material consequences of the plea and such information is relevant to the decision to enter into the plea in the first place."). What Plaintiff asserts is that Defendants improperly computed his sentence, which somehow in turn makes his plea invalid. There is no support in New Mexico law for Plaintiff's argument that Defendants' alleged miscalculation of his sentence makes his plea invalid. *State v. Aqui*, 104 N.M. 345, 348, 271 P.2d 771, 774 (1986) (recognizing the distinction between challenging the execution of a sentence and challenging the sentence itself); *Ira*, 2002-NMCA-037, ¶ 35 ("We disagree with Defendant's suggestion that his plea was invalid because he did not know the correct maximum penalty that he faced at the time of his plea. . . . [T]he incorrect information that Defendant received [at sentencing] did not render his plea invalid"). New Mexico's sovereign immunity has not been waived so Defendants are not liable to Plaintiff under state law.

*Plaintiff's Federal Claims Under 42 U.S.C. § 1983*

Plaintiff contends that his liberty and property rights under the Fourteenth Amendment were violated when Defendants (1) held him in prison too long, and (2) subjected him to conditions of probation.

    A.    *Plaintiff's Prison Term*

In Plaintiff's criminal case CR 97-1307, it is undisputed (1) that Plaintiff was sentenced to 48 months in prison, (2) that Plaintiff's sentence began on October 2, 1997, (3) that Plaintiff was

6

entitled to credit for 11 months pre-sentence confinement, and (4) that Plaintiff earned 14 months and 18 days of good-time credit while in the penitentiary.[1] The difference between August 13, 1999, Plaintiff's actual release date, and January 17, 1999, the day Plaintiff argues that he should have been released, is approximately 6 months and 27 days. Doc. No. 42 at 6. Plaintiff contends that January 17, 1999, was his correct release date because he was "legitimately given" 6 months and 27 days pre-sentence confinement credit in the state court order on April 29, 1998. Doc. No. 39 at 4.

On April 29, 1998, the state court sentenced Plaintiff in CR 97-1307. The Judgement and Sentence reads: "Defendant is awarded pre-sentence confinement credit in the amount of eleven (11) months as of 10/2/97 and credit from 10/2/97 to 5/29/98[2] with accrued good time . . . ." Doc. No. 36, Ex. 16. The 6 months and 27 days in dispute equals the time between October 2, 1997, when Plaintiff's sentence officially began, and April 29, 1998, when Plaintiff was formally sentenced. At the April 29, 1998, hearing the state judge ruled that the "additional credit" from October 2, 1997 to April 29, 1998, was "to attempt to reflect the good-time credit that you should have received and would have received had you been sentenced [on October 2, 1997] as a habitual [offender]. Actually, probably the easiest way would be to . . . enter the [Judgement and

---

[1] A prison inmate can earn good-time credit to be applied to his sentence only after he has been held in prison for 60 days. NMSA 1978, § 33-2-34(F)(3) (1988). The Department of Corrections received Plaintiff on February 25, 1998, making Plaintiff eligible to begin earning good-time credit on April 25, 1998. From April 25, 1998 until his release on August 13, 1999, Plaintiff received all the good-time credit to which he was entitled. Plaintiff did not earn 30 days of good-time credit during October 1998 because Plaintiff failed to work as required by law to earn good-time credits. Section 33-2-34 (F)(1). Thus, 14 months and 18 days properly reflects the good-time credits Plaintiff earned.

[2] The parties agree that the date "5/29/98" was meant to be 4/29/98, the date of Plaintiff's sentencing hearing.

7

Sentence] nunc pro tunc from October 2nd arraignment . . . ." Doc. No. 7, Ex. 1, Tr.17, ll. 4-9. For the reasons discussed in this Court's February 20, 2002, Memorandum Opinion and Order (Doc. No. 19), the state court judge had no authority under state law to award good-time credit in this manner. Doc. No. 19, pp. 6-7; *Aqui*, 104 N.M. at 351, 271 P.2d at 777 (holding that the state district court cannot award good time credit for the time a convict spends in county jail waiting to be sentenced).

The state court judge ordered Plaintiff's sentence to begin on October 2, 1997. It is impossible to consider the 6 months and 27 days Plaintiff spent confined from October 2, 1997 to April 29, 1998, as pre-sentence confinement credit that Plaintiff earned *before* October 2, 1997. To do so would allow Plaintiff to count the 6 months and 27 days twice, and Plaintiff offers no authority that permits him to calculate his sentence that way. Defendants properly considered Plaintiff's confinement in the county jail from October 2, 1997, to February 25, 1998, when Plaintiff was transported to the penitentiary, as post-sentence confinement credit.

Defendants' supplemental brief (Doc. No. 36) provides a summary of how Defendants computed Plaintiff's release date as August 13, 1999. Defendants correctly considered (1) Plaintiff's sentence (48 months), (2) when Plaintiff's sentence began (October 2, 1997), (3) the credit for Plaintiff's pre-sentence confinement (11 months), (4) when Plaintiff was transferred to the custody of the Corrections Department (February 25, 1998), (5) when Plaintiff became eligible to begin earning good-time credit (April 25, 1998), and (6) the good-time credit Plaintiff earned (14 months and 18 days). When Plaintiff's credits for his pre-sentence confinement and good time earned (a total of 25 months and 18 days) are deducted from Plaintiff's projected release date of October 1, 2001, Plaintiff's release date becomes August 13, 1999. Defendants'

8

calculation of Plaintiff's release date complied with state law. There is no merit to Plaintiff's claim that Defendants deprived Plaintiff of his rights under the Fourteenth Amendment to the Constitution of the United States by holding him in prison until he satisfied his mandatory state sentence. Without a violation of Plaintiff's federal rights Defendants are entitled to qualified immunity on all of Plaintiff's claims based on his confinement in prison. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (holding that to overcome an assertion of qualified immunity a plaintiff must show (1) a violation of a federal right, and (2) that the right was clearly established at the time of the unlawful conduct.); *DeAnzona, et al. v. City and County of Denver*; 222 F.3d 1229, 1234 (10th Cir. 2000) ("In order to overcome the qualified immunity of a supervisor, a plaintiff most show that the defendant-supervisor took deliberate action in directing the constitutional violation, or had actual knowledge of the violation and allowed the violation to continue.").

### B.  *Plaintiff's Probation and Parole*

After his release from prison Plaintiff began a program of intensive supervision with the Probation and Parole Division (PPD) of the Corrections Department. The intensive supervision program required Plaintiff to complete three phases of supervision, with each successive phase providing Plaintiff with more liberty. On May 4, 2000, after completing the first two phases of the program, Plaintiff tested positive for use of cocaine. Doc. No. 40, Ex. 31, p. 2. The positive drug test forced Plaintiff to repeat Phase I of the program, which involved the most restrictive oversight of Plaintiff's activities. Plaintiff's repeat of Phase I was to last to August 13, 2000, when his parole would end. Doc. No. 40, Ex. 32. Additionally, PPD made Plaintiff move from his parents home to the Transitional Living Communities Program. Doc. No. 40, Ex. 31, p. 1.

9

After June 6, 2000, Plaintiff quit reporting to PPD as required by his intensive supervision program. On June 9, 2000, the Transitional Living Communities Program notified PPD that Plaintiff was missing. PPD informed the state court that Plaintiff had violated the terms of his probation in CR 97-1307. Doc. No. 40, Ex 35. Based on that information the state court issued a warrant for Plaintiff's arrest and the district attorney filed a motion to revoke Plaintiff's probation.

Authorities arrested Plaintiff in Colorado sometime in late March or early April 2001.[3] Law enforcement officers detained Plaintiff and transported him back to New Mexico for a probation revocation hearing. On April 9, 2001, the state court held a hearing on the motion to revoke Plaintiff's probation. After the judge reviewed Plaintiff's judgment and sentence he concluded that Plaintiff could not have violated his probation because Plaintiff "shouldn't have been on probation to begin with." Doc. No. 40, Ex. 42, Tr.-3, ll. 8-9. The state withdrew the motion to revoke Plaintiff's probation and Plaintiff was released.

Using the state court's ruling Plaintiff argues that PPD lacked the authority to supervise him after his release from prison. Plaintiff is mistaken. Plaintiff's judgment and sentence in CR 97-1307 ordered Plaintiff to serve one year of parole. Plaintiff's parole plan expressly required Plaintiff's participation in both the intensive supervision program and the Transitional Living Communities Program. Doc. No. 40, Exs. 24, p. 2 & 27 p. 1. Defendants' supervision of Plaintiff from the date of his release on August 13, 1999, to his disappearance on June 9, 2000, all took place while Plaintiff was on parole. Plaintiff's judgment and sentence gave Defendants the

---

[3] The parties do not agree on the date of Plaintiff's arrest.

authority to place Plaintiff in intensive supervision and the Transitional Living Communities Program.

Defendants could have issued an arrest warrant for Plaintiff because he violated the terms of his parole. However, Defendants chose not to because they incorrectly believed that Plaintiff had to satisfy the standard conditions of probation for 18 months in addition to his one year of parole in CR 97-1307.[4] Defendants' mistaken belief was not unreasonable. Plaintiff's judgment and sentence states that Plaintiff was to serve "probation without condition after release, with the standard conditions of probation . . . ." Doc. No. 36, Ex. 16 at 1. Plaintiff's Amended Order of Probation had similar language. On June 6, 2000, at Plaintiff's request, a counselor with PPD called the state court to clarify the status of Plaintiff' probation. An employee with the state court told Plaintiff's counselor that "when the judge order[s] probation without condition it means that there are no special conditions [of probation]." Doc. No. 40 at 33, p. 3. Thus, Defendants' belief that Plaintiff had to comply with the standard conditions of probation for 18 months in CR 97-1307 was not without foundation.

Nonetheless Plaintiff claims that his arrest, detention, and transportation back to New Mexico for the probation revocation hearing deprived him of his liberty and property rights under the Due Process Clause of the Fourteenth Amendment. However, the loss of liberty or property due to the negligence of state officials does not work a deprivation of rights under the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 330 (1986) ("Not only does the word deprive in the Due Process Clause connote more than a negligent act, but we should not open the

---

[4] Plaintiff's failure to comply with the requirements of intensive supervision and stay at the Transitional Communities Living Program violated both the terms of Plaintiff's parole and the standard conditions of probation.

federal courts to lawsuits where there has been no affirmative abuse of power.") (internal quotations omitted). Defendants were faced with an ambiguous judgment and sentence. From the counselor's call to the state court, Defendants had reason to believe that Plaintiff had to comply with the standard conditions of probation. Defendants' reporting to the state court that Plaintiff had violated his probation conditions in CR 97-1307 was, at best, the result of negligence.

Notably, Plaintiff benefitted from Defendants' negligence. Had Defendants realized that Plaintiff was not on probation in CR 97-1307, Defendants could have issued a warrant for Plaintiff's arrest for violating the conditions of his parole, instead of terminating Plaintiff's parole. Doc. No. 40, Ex. 36 at 3. If that had happened, Defendants could have required Plaintiff to finish his parole under intensive supervision. NMSA 1978, § 31-21-14 (D) (1963); *Conston v. New Mexico State Bd. of Probation and Parole*, 79 N.M. 385, 387, 444 P.2d 296, 298 (N.M. 1968) (observing that once a warrant is issued "if the parolee cannot be located, he is a fugitive from justice, and . . . he may be denied credit as time served for that period from the date of the violation to the date of arrest."). Quite the opposite from an affirmative abuse of official power, Defendants failed to grasp the authority they had at their disposal to restrict Defendant's activities

more than they did.⁵  On this record Plaintiff cannot demonstrate a violation of his Fourteenth Amendment rights under the Due Process Clause.  Therefore, Defendants also are entitled to qualified immunity regarding their supervision of Plaintiff following his release from prison, and their involvement in Plaintiff's arrest, detention, and transportation from Colorado to New Mexico for his probation revocation hearing.  *Medina*, 252 F.3d at 1128 (holding that a plaintiff must show a violation of a federal right to overcome an assertion of qualified immunity); *DeAnzona, et al. v. City and County of Denver*; 222 F.3d at 1234.

Plaintiff cites to many New Mexico cases, all of which discuss how to properly calculate a probationer's time served.  Doc. No. 43, pp. 2-5.  None of the cases Plaintiff cites stands for the proposition that arresting a person suspected of a probation violation and bringing that person before a judicial tribunal violates that person's due process rights.  *Cf. Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("[F]alse imprisonment does not become a violation of the Fourteenth Amendment merely because the Defendant is a state official.").

All of Plaintiff's remaining arguments are without merit.

---

⁵ Defendants repeatedly confused Plaintiff's judgment and sentence in CR 97-1307 with Plaintiff's concurrent judgment and sentence in CR 94-2168.  *E.g.* Doc. No. 40, Ex. 35 (stating incorrectly that Plaintiff's conviction in CR 97-1307 was for battery upon a peace officer, Plaintiff's offense in CR 94-2168, rather than possession of cocaine).  The judgment and sentence in CR 97-2168 ordered Plaintiff to serve 18 months probation and "obey all rules, regulations, and orders of Probation Authorities."  Doc. No. 36, Ex. 3, at 2.  Plaintiff's 18 months of probation in CR 94-2168 began when Plaintiff was released from prison on both CR 97-1307 and CR 94-2168.  Defendants' inability to distinguish the two cases caused them to overlook filing a motion to revoke Plaintiff's probation in CR-2168, which, again, favored Plaintiff.  Although Plaintiff argues that his probation in CR 94-2168 was invalid without a separate order of probation, Plaintiff does not offer any authority to support that claim.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reconsider Final Order for Summary Judgment [and] for Permission to Amend Complaint and Supporting Memorandum (Doc. No. 22) is DENIED.

_____
CHIEF UNITED STATES DISTRICT JUDGE